IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | |
|---|---|
| ALPS PROPERTY & CASUALTY<br>INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>POTEAT LAW FIRM LLC;<br>CHAD E. POTEAT, ESQ.; and<br>JASON W. HAGGARD, as Administrator<br>of the Estate of Justin P. Haggard,<br><br>        Defendants. | Case No.   3:21-603-JFA |

## COMPLAINT

Plaintiff ALPS Property & Casualty Insurance Company ("ALPS"), pursuant to 28 U.S.C. §§ 2201(a) and 2202 and Federal Rules of Civil Procedure 8(a) and 57, for its complaint against Defendants Poteat Law Firm LLC ("Poteat Firm"), Chad E. Poteat ("Poteat" and together with the Poteat Firm, "Poteat Defendants"), and Jason W. Haggard ("Haggard")[1], in his capacity as the Administrator of the Estate of Justin P. Haggard, alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    ALPS is an insurance company and corporation organized under the laws of the State of Montana with its principal place of business in the State of Montana; ALPS is a citizen of the State of Montana.

2.    The Poteat Firm is a limited liability company formed under the laws of the State of South Carolina with its principal place of business in Columbia, South Carolina.

---

[1] ALPS will refer to Haggard and the Poteat Defendants collectively as "Defendants".

4842-0322-7356.1

3. Poteat is an attorney licensed in the State of South Carolina and, upon information and belief, domiciled in and a citizen of the State of South Carolina. Poteat is, upon information and belief, the sole member of the Poteat Firm.

4. Because Poteat is, upon information and belief, domiciled in and a citizen of the State of South Carolina, and Poteat is, upon information and belief, the sole member of the Poteat Firm, the Poteat Firm is a citizen of the State of South Carolina.

5. Haggard is, upon information and belief, the Administrator of the Estate of Justin P. Haggard ("Haggard Estate") and domiciled in the State of Washington. Justin P. Haggard ("Justin") is deceased and, upon information and belief, was domiciled in and a citizen of the State of North Carolina at the time of his death. As the legal representative of the Haggard Estate, for purposes of diversity jurisdiction, Haggard is deemed a citizen of the State of North Carolina. *See* 28 U.S.C. § 1332(c)(2).

6. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between ALPS and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

## GENERAL ALLEGATIONS

8. In this insurance coverage action, ALPS seeks a judgment declaring Lawyers Professional Liability Insurance Policy No. ALPS17203-6 issued by ALPS to the Poteat Firm for the policy period October 1, 2019 to October 1, 2020 ("Policy") does not afford coverage to the Poteat Defendants with respect to the suit styled *Haggard, as Administrator of the Estate of*

*Justin P. Haggard v. Ellis, et al.*, No. 20-CVS-2206 (Gen. Ct. of Justice, Sup. Ct. Div., Catawba Cty., N.C.) ("Haggard Suit").  A true and correct copy of the Policy is attached as Exhibit A.

### I.  Background – The Wrongful Death Suit and the Haggard Suit

9.     The Haggard Suit arises from the Poteat Defendants' representation of Haggard, in his capacity as Administrator of the Haggard Estate, following the death of Haggard's 36-year-old brother, Justin, in the suit styled *Jason W. Haggard, as Administrator of the Estate of Justin P. Haggard v. DLP Frye Reg. Med. Ctr., LLC, et al.*, No. 18-CVS-142 (Gen. Ct. of Justice, Sup. Ct. Div., Catawba Cty., N.C.) ("Wrongful Death Suit").  (September 3, 2020 Complaint in the Haggard Suit ("Haggard Complaint") ¶¶ 8-9.  A true and correct copy of the Haggard Complaint is attached as Exhibit B.).

### A.  Wrongful Death Suit

10.    On May 29, 2016, Haggard alleges his brother, Justin, went to the emergency room of the Frye Regional Medical Center in Hickory, North Carolina ("Frye Medical Center") because he was experiencing abdominal pain, nausea, and vomiting.  (September 28, 2018 Complaint in the Wrongful Death Suit ("Wrongful Death Complaint") ¶ 7.  A true and correct copy of the Wrongful Death Complaint is attached as Exhibit C.).

11.    Haggard alleges Frye Medical Center admitted Justin on May 29, 2016 and placed him on a telemetry unit to monitor his heart.  (Exhibit C ¶ 8).

12.    On or around 2:15 a.m. on May 30, 2016, Haggard alleges a nurse found Justin on the floor of his hospital room in cardiac arrest.  (Exhibit C ¶ 10).  Haggard alleges Justin was revived and transferred to the intensive care unit of Frye Medical Center, but he never regained consciousness and passed away on May 30, 2016.  (*Id.*).

13. Haggard alleges Justin died because Frye Medical Center and its staff was negligent and failed to properly care for Justin. (Exhibit C ¶¶ 11-13).

14. On or around June 20, 2016, Haggard alleges he engaged the Poteat Defendants to represent Haggard with respect to claims against Frye Medical Center and others arising from Justin's death. (Exhibit B ¶ 9).

15. On May 29, 2018, prior to filing a complaint in the Wrongful Death Suit, Haggard filed a motion to extend by 120 days the two-year statute of limitations for a medical malpractice action in North Carolina. (May 30, 2018 Order in the Wrongful Death Suit ("May 2018 Order") at 1. A true and correct copy of the May 2018 Order is attached as Exhibit D.).

16. By order dated May 30, 2018, the court in the Wrongful Death Suit granted Haggard's motion and extended the statute of limitations to September 27, 2018. (Exhibit D at 1).

17. On or around September 27, 2018, upon information and belief, the Poteat Defendants contacted attorney Todd Ellis ("Ellis"), a member of the North Carolina bar, to assist as North Carolina counsel for Haggard in the Wrongful Death Suit.

18. On September 28, 2018, on behalf of Haggard, Ellis and the Poteat Defendants filed the Wrongful Death Complaint against Frye Medical Center and Erin Darby, R.N. ("Darby" and together with Frye Medical Center, "Frye Parties"), a nurse with Frye Medical Center. (Exhibit C; *see also* Exhibit B ¶ 12).

19. Haggard alleges the Poteat Defendants and Ellis filed the Wrongful Death Complaint one day after the court-ordered expiration of the statute of limitations for Haggard's medical malpractice claim. (Exhibit B ¶¶ 11-12).

4

20. In the Wrongful Death Complaint, Haggard alleged negligence, recklessness, and professional negligence against the Frye Parties arising from Justin's death. (Exhibit C ¶¶ 10-17).

21. On October 29, 2018, the Frye Parties filed an answer in the Wrongful Death Suit ("Frye Answer"). A true and correct copy of the Frye Answer is attached as Exhibit E.

22. In the Frye Answer, as an affirmative defense, the Frye Parties alleged the Wrongful Death Suit was barred by the statute of limitations and should be dismissed with prejudice. (Exhibit E at 4-5).

23. On January 25, 2019, the Frye Parties filed a motion to dismiss the Wrongful Death Complaint on statute of limitations grounds. (Frye Parties' January 25, 2019 Rule 12(b)(6) Motion to Dismiss in the Wrongful Death Suit ("January 2019 Rule 12(b)(6) Motion") at 1. A true and correct copy of the January 2019 Rule 12(b)(6) Motion and the Frye Parties' Memorandum of Law in Support of the January 2019 Rule 12(b)(6) Motion are attached as Exhibit F.).

24. In the January 2019 Rule 12(b)(6) Motion, the Frye Parties alleged Haggard's wrongful death and professional negligence causes of action in the Wrongful Death Suit were "time-barred" because Haggard did not file the Wrongful Death Complaint "until after expiration of both the two-year statute of limitations governing wrongful death claims and the 120-day extension authorized by N.C. R. Civ. P. 9(j) for medical malpractice claims." (Exhibit F, Motion at 1 & Memorandum at 1-2, 6).

25. On January 25, 2019, the Frye Parties filed a separate motion to dismiss the Wrongful Death Complaint for failure to comply with certain medical malpractice pleading requirements provided under North Carolina law. (Frye Parties' January 25, 2019 Motion to

5

Dismiss for Noncompliance with Rule 9(j) in the Wrongful Death Suit ("January 2019 Motion to Dismiss for Noncompliance" and together with the January 2019 Rule 12(b)(6) Motion, "January 2019 Motions to Dismiss") at 1. A true and correct copy of the January 2019 Motion to Dismiss for Noncompliance is attached as Exhibit G.).

26. By correspondence dated January 25, 2019 ("January 25, 2019 Correspondence"), counsel for the Frye Parties provided the Poteat Defendants and Ellis with copies of the January 2019 Motions to Dismiss. (January 25, 2019 Correspondence at 1. A true and correct copy of the January 25, 2019 Correspondence, without enclosures, is attached as Exhibit H.).

27. On March 25, 2019, the court in the Wrongful Death Suit held a hearing on the Frye Parties' January 2019 Motions to Dismiss ("March 25, 2019 Hearing"). (*See* March 25, 2019 Hearing Transcript in the Wrongful Death Suit ("March 25, 2019 Hearing Transcript"). A true and correct copy of the March 25, 2019 Hearing Transcript is attached as Exhibit I.).

28. Poteat and Ellis appeared at the March 25, 2019 Hearing on behalf of Haggard. (Exhibit I at 1).

29. In the Frye Parties' counsel's opening statement at the March 25, 2019 Hearing, he argued the Wrongful Death Complaint "was filed one day late on September 28, 2018. . . . And therefore, it was filed outside the statute of limitations and should be dismissed." (Exhibit I at 7:5-6, 7:14-17).

30. In Poteat's oral argument during the March 25, 2019 Hearing, he stated:

Judge, this was solely under my purview. It was not under Mr. Ellis' purview. . . . I am the one that calendared this matter for September 30th, 2018. And, by my recollection, it was calendared as a four-month rule, rather than the hundred and twenty-day rule. . . . I think in this same case, it does say a hundred and twenty-days. And if you do go by that math, then I have missed the statute of limitations and I don't have an argument other than

6

> the fact it was my mistake. And unless the court feels gracious enough to allow me to get by this to move forward, then I have no other legal defense that I can put forth.

(Exhibit I at 8:2-8, 9:2-8).

31.     In response to Poteat's statements at the March 25, 2019 Hearing, the court in the Wrongful Death Suit noted the May 2018 Order "states that the statute of limitations is extended until September 27th of 2018" and asked Poteat whether he received or reviewed the May 2018 Order. (Exhibit I at 9:14-24). In response to the court's questions regarding his receipt and review of the May 2018 Order, Poteat stated: "Yes, Your Honor. I have looked at the document. I'm sorry. . . .[I]t was simply put down as a four-month anniversary of the statute of limitations date, which had been . . . previously on our calendar for May 30th and done in complete error. I mean, it's just a -- it was a mistake on my part." (*Id*. at 9:25-10:8).

32.     At the conclusion of the March 25, 2019 Hearing, the court stated it intended to "grant the [Frye Parties'] motion to dismiss" the Wrongful Death Complaint and ordered counsel for the parties to "prepare the order." (Exhibit I at 10:9-14).

33.     By order dated April 22, 2019 ("April 2019 Order"), the court in the Wrongful Death Suit granted the Frye Parties' January 2019 Rule 12(b)(6) Motion "for failure to satisfy the statute of limitations" and dismissed the Wrongful Death Suit with prejudice. (April 2019 Order at 1. A true and correct copy of the April 2019 Order is attached as Exhibit J.). The April 2019 Order was "SEEN AND AGREED" to by the Poteat Defendants. (Exhibit J at 2).

34.     By correspondence dated May 1, 2019 ("May 1, 2019 Correspondence"), the Frye Parties' counsel provided the Poteat Defendants with a copy of the April 2019 Order. (May 1, 2019 Correspondence at 1. A true and correct copy of the May 1, 2019 Correspondence is attached as Exhibit K.).

7

### B. Haggard Suit

35. On September 4, 2020, Haggard filed the Haggard Complaint against the Poteat Defendants, Ellis, and the Law Office of Todd Ellis, P.A. ("Ellis Firm" and together with Ellis, "Ellis Parties") in the Haggard Suit.

36. In the Haggard Complaint, Haggard alleges professional negligence against the Poteat Defendants and the Ellis Parties arising from their representation of Haggard in the Wrongful Death Suit. (Exhibit B ¶¶ 8-9).

37. In the Haggard Complaint's only cause of action, for negligence, Haggard alleges the Poteat Defendants and the Ellis Parties: (a) "knew [Haggard] relied upon the proper performance by them of their responsibilities as litigation attorneys and firms"; (b) "either knew or should have anticipated that their failure to perform these responsibilities properly was likely to result in harm to" Haggard; and (c) "therefore, had a duty to act reasonably and with due care in the performance of these responsibilities." (Exhibit B ¶ 15).

38. Haggard alleges the Poteat Defendants and the Ellis Parties breached their professional duties to act reasonably and with due care by, among other things: (a) "[f]ailing to file the [Wrongful Death] [C]omplaint within the applicable statute of limitations", which resulted in the dismissal with prejudice of the Wrongful Death Suit; (b) "[f]ailing to comply with N.C. Gen. Stat. § 1A-1, Rule 9(j);" and (c) "[a]pplying the South Carolina expert affidavit requirements of S.C. Code § 15-36-100(B) to a North Carolina civil action[.]" (Exhibit B ¶¶ 12-16).

39. In the Haggard Complaint, Haggard seeks the following relief: (a) from the Poteat Defendants and the Ellis Parties, jointly and severally, damages "in an amount greater than $25,000"; (b) "interest as allowed by law"; (c) costs of suit, including attorneys' fees in the

8

Haggard Suit; and (d) "such other relief as the Court deems just, fit, and proper." (Exhibit B ¶ 17 & Prayer for Relief).

40. On November 11, 2020, the Poteat Defendants filed their answer to the Haggard Complaint ("Poteat Answer"). A true and correct copy of the Poteat Answer is attached as Exhibit L.

## II. The Policy

### A. 2019 Application

41. On September 27, 2019, Poteat executed an application ("2019 Application") on behalf of the Poteat Firm for the Policy.

42. In the 2019 Application, Poteat answered "No" to the question: "After inquiring with all members of the Firm, is any attorney or employee in the Firm aware of or have knowledge of any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former attorney in the Firm or its predecessors, regardless of the merit of such claim?"

43. The 2019 Application provides:

Failure to report any claim made against the applicant Firm or any attorney in the applicant Firm under any current or previous insurance policy, or failure to timely disclose facts, events or circumstances which may give rise to a claim against any current or prior insured, may result in the absence of insurance coverage for any such claim, facts, events, or circumstances which should have been reported, and may result in the cancellation or rescission of any policy ALPS may issue in reliance on this application.

### B. The Policy

44. ALPS issued the Policy to the Poteat Firm for the policy period October 1, 2019 to October 1, 2020. (Exhibit A, Declarations Items 1 and 4). The Policy provides limits of liability of $1,000,000 each claim and $1,000,000 in aggregate. (*Id.*, Declarations Item 5).

9

45. Poteat is listed as the sole individual attorney insured under the Policy. (Exhibit A, Declarations Item 3).

46. The Policy provides legal professional liability insurance on a claims made and reported basis. (Exhibit A, Insuring Agreements § 1.A).

47. The Policy's insuring agreement states, in relevant part:

A. COVERAGE

Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that all of the following conditions are satisfied:

1. The Claim arises from a Wrongful Act that occurred on or after the Retroactive Coverage Date set forth in Item 2 of the Declarations;

2. At the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim;

3. Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date; and

4. The Claim is not otherwise covered under any other insurance policy that the Company has issued to the Named Insured.

B. DEFENSE AND CLAIM EXPENSES

1. For any Claim covered under this Policy, the Company shall have the right and the duty to defend such Claim even if any or all of the allegations of the Claim are groundless, false or fraudulent[.] . . .

2. The Company shall pay Claim Expenses in accordance with the terms of this Policy. The Company shall not have a duty to defend or to pay such expenses as to any Claim not covered under this Policy, and shall have the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered

>Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims.

(Exhibit A, Insuring Agreements §§ 1.A-1.B.2) (emphasis in original).

48. "Claim" is defined in the Policy as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured." (Exhibit A, Definitions § 2.C).

49. "Claim Expenses" is defined in the Policy, in relevant part, as "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by" ALPS. (Exhibit A, Definitions §§ D.1-D.2).

50. "Wrongful Act" is defined in the Policy as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured." (Exhibit A, Definitions § 2.BB).

51. The Policy provides:

> 6.B.1  When an Insured becomes aware of a Wrongful Act that could reasonably be expected to be the basis of a Claim, but no Claim arising therefrom has yet been made, then as a condition precedent to the Company's obligation to defend or indemnify the Insured under this Policy, the Insured shall immediately give written notice to the Company.  Such notice shall include the fullest information obtainable concerning the potential Claim.

* * *

> 6.B.4  . . . [I]n the event an Insured fails to give written notice to the Company of a potential Claim, as described in Section 6.B.1, prior to the end of the Policy Period in which the Insured first becomes aware of the act, error, omission, or Personal Injury, then no coverage for any such Claim shall be afforded to the Insured under any future policy issued by the Company.

11

(Exhibit A, Conditions §§ 6.B.1 & 6.B.4).

52. The Policy does not apply to:

ANY CLAIM ARISING FROM OR IN CONNECTION WITH . . . [a]ny Wrongful Act that occurred prior to the Effective Date of this Policy, if . . . [p]rior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or casually, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit A, Exclusions § 3.E.3) (emphasis in original).

### III. Notice to ALPS and ALPS's Coverage Position

53. By email correspondence dated September 30, 2020 ("September 30, 2020 Correspondence"), the Poteat Defendants first provided ALPS with notice of the Haggard Suit and a copy of the Haggard Complaint.

54. By correspondence dated October 30, 2020, ALPS agreed to provide the Poteat Defendants with a defense against the Haggard Suit under the Policy subject to a complete reservation of ALPS's rights to deny coverage and reimbursement of defense costs, and ALPS has provided such defense.

### FIRST CAUSE OF ACTION

**(For a Declaration the Policy Does Not Afford Coverage to the Poteat Defendants for the Haggard Suit – Against all Defendants)**

55. ALPS incorporates and realleges paragraphs 1 through 54 as if fully set forth herein.

56. The Policy potentially provides coverage for claims only if "[a]t the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim[.]" (Exhibit A, Insuring Agreements § 1.A.2).

12

57. The Policy specifically excludes from coverage any claim arising from or in connection with "[a]ny Wrongful Act that occurred prior to" the Policy's October 1, 2019 effective date if:

> Prior to the Effective Date of this Policy, any Insured gave or should have given to any insurer, notice of a Claim or potential Claim arising from or in connection with the Wrongful Act, or from any Wrongful Act that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision to the Claim or potential Claim.

(Exhibit A, Exclusions § 3.E.3).

58. Under the Policy, "Wrongful Acts" is defined as "an actual or alleged: (1) [a]ct, error or omission in Professional Services that were or should have been rendered by the Insured; and (2) [a] Personal Injury resulting from the Professional Services of the Insured." (Exhibit A, Definitions § 2.BB).

59. The following occurred prior to the Policy's October 1, 2019 effective date:

   a. On May 30, 2016, Haggard's brother, Justin, died after being admitted to Frye Medical Center; Haggard alleges Justin died because Frye Medical Center and its staff was negligent and failed to properly care for Justin. (Exhibit C ¶¶ 11-13).

   b. On or around June 20, 2016, Haggard engaged the Poteat Defendants to represent Haggard with respect to claims against Frye Medical Center and others arising from Justin's death. (Exhibit B ¶ 9).

   c. On May 29, 2018, Haggard filed a motion to extend by 120 days the two-year statute of limitations for a medical malpractice action in North Carolina. (Exhibit D at 1).

   d. By order dated May 30, 2018, the court in the Wrongful Death Suit granted Haggard's motion and extended the statute of limitations to September 27, 2018. (Exhibit D at 1).

   e. On September 28, 2018, on behalf of Haggard, the Ellis Parties and the Poteat Defendants filed the Wrongful Death Complaint against the Frye Parties. (Exhibit C; *see also* Exhibit B ¶ 12).

f.  On October 29, 2018, the Frye Parties filed an answer in the Wrongful Death Suit. (Exhibit E). In the Frye Answer, as an affirmative defense, the Frye Parties alleged the Wrongful Death Suit was barred by the statute of limitations and should be dismissed with prejudice. (Exhibit E at 4-5).

g.  On January 25, 2019, the Frye Parties filed the January 2019 Motion to Dismiss for Noncompliance and the January 2019 Rule 12(b)(6) Motion, a motion to dismiss the Wrongful Death Complaint on statute of limitations grounds. (Exhibit F at 1; Exhibit G). In the January 2019 Rule 12(b)(6) Motion, the Frye Parties alleged Haggard's wrongful death and professional negligence causes of action in the Wrongful Death Suit were "time-barred" because Haggard did not file the Wrongful Death Complaint "until after expiration of both the two-year statute of limitations governing wrongful death claims and the 120-day extension authorized by N.C. R. Civ. P. 9(j) for medical malpractice claims." (Exhibit F, Motion at 1 & Memorandum at 1-2, 6).

h.  By correspondence dated January 25, 2019, counsel for the Frye Parties provided the Poteat Defendants with copies of the January 2019 Motions to Dismiss. (Exhibit H).

i.  On March 25, 2019, the court in the Wrongful Death Suit held a hearing on the Frye Parties' January 2019 Motions to Dismiss. (Exhibit I at 1). Poteat attended the March 25, 2019 Hearing on behalf of Haggard. (*Id.*).

j.  At the March 25, 2019 Hearing, the Frye Parties' counsel argued the Wrongful Death Complaint "was filed one day late on September 28, 2018. . . . And therefore, it was filed outside the statute of limitations and should be dismissed." (Exhibit I at 7:5-6, 7:14-17). Poteat, in response, stated: "I have missed the statute of limitations and I don't have an argument other than the fact it was my mistake. And unless the court feels gracious enough to allow me to get by this to move forward, then I have no other legal defense that I can put forth." (*Id.* at 9:4-8).

k.  At the conclusion of the March 25, 2019 Hearing, the court stated it intended to "grant the [Frye Parties'] motion to dismiss" the Wrongful Death Complaint. (Exhibit I at 10:9-10).

l.  By order dated April 22, 2019, the court in the Wrongful Death Suit granted the Frye Parties' January 2019 Rule 12(b)(6) Motion "for failure to satisfy the statute of limitations" and dismissed the Wrongful Death Suit with prejudice. (Exhibit J at 1). The April 2019 Order was "SEEN AND AGREED" to by the Poteat Defendants. (*Id.* at 2).

4842-0322-7356.1

      m.      By correspondence dated May 1, 2019, the Frye Parties' counsel provided the Poteat Defendants with a copy of the April 2019 Order. (Exhibit K at 1).

60.     Despite knowledge of the events described in Paragraph 59—*e.g.*, (a) the untimely filing of the Wrongful Death Complaint after the expiration of the statute of limitations period; (b) a hearing on the January 2019 Motions to Dismiss, at which Poteat admitted his error in mis-calendaring the deadline and filing the Wrongful Death Complaint after the statute of limitations had expired; and (c) dismissal with prejudice of the Wrongful Death Suit on statute of limitations grounds—the Poteat Defendants did not notify ALPS of any actual or potential claim against the Poteat Defendants prior to the Policy's October 1, 2019 effective date.

61.     The Poteat Defendants first notified ALPS of the Haggard Suit in the September 30, 2020 Correspondence.

62.     The Haggard Suit is outside the coverage afforded by the Policy because: (a) prior to the October 1, 2019 effective date of the Policy, the Poteat Defendants knew or reasonably should have known the acts, errors, or omissions alleged in the Haggard Suit might be the basis of a claim; (b) prior to the Policy's October 1, 2019 effective date, the Poteat Defendants should have given ALPS notice of the acts, errors, or omissions that form the basis of the Haggard Suit or the potential claims against the Poteat Defendants arising from the acts, errors, or omissions that form the basis of the Haggard Suit; and (c) the Poteat Defendants did not notify ALPS of the acts, errors, or omissions that form the basis of the Haggard Suit or the potential claims against the Poteat Defendants arising from the acts, errors, or omissions that form the basis of the Haggard Suit until September 30, 2020, after inception of the Policy.

63.     An actual controversy exists between ALPS and Defendants regarding whether the Policy affords coverage for the Haggard Suit.

64. Because the Haggard Suit is outside the coverage afforded by the Policy, ALPS is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring the Policy does not afford coverage for the Haggard Suit and ALPS has no duty to defend or indemnify the Poteat Defendants with respect to the Haggard Suit.

## SECOND CAUSE OF ACTION

**(Reimbursement of Defense Expenses – Against the Poteat Defendants)**

65. ALPS incorporates and realleges paragraphs 1 through 64 as if fully set forth herein.

66. The Policy states ALPS has no duty to defend or pay Claim Expenses for "any Claim not covered" and has "the right to seek reimbursement from any Insured, who shall promptly provide such reimbursement, for any amount paid by the Company in defending any such non-covered Claim, including any amount paid in defending a non-covered Claim that is asserted together with one or more covered Claims." (Exhibit A, Insuring Agreements § 1.B.2).

67. The Policy defines "Claim Expenses" to mean, in relevant part, "[f]ees charged by any attorney(s) designated" by ALPS "to defend a Claim or otherwise represent an Insured;" and "[a]ll other fees, costs, and expenses resulting from the investigation, adjustment, defense, and appeal of a Claim (including a suit or proceeding arising in connection therewith), if incurred by" ALPS. (Exhibit A, Definitions §§ D.1-D.2).

68. ALPS is defending the Poteat Defendants against the Haggard Suit under the Policy subject to a complete reservation of rights, including the right to seek recovery from Poteat, the Poteat Firm, or any insured under the Policy of all amounts paid in defense of non-covered aspects of the Haggard Suit.

16

69.     For the reasons described above in Paragraphs 55 through 62, the Haggard Suit is outside the coverage afforded by the Policy.

70.     ALPS is entitled to judgment in its favor and against the Poteat Defendants for the amount of attorneys' fees and costs paid to defend the Poteat Defendants with respect to the Haggard Suit because the Haggard Suit is not covered under the Policy.

WHEREFORE, ALPS prays that judgment be entered in its favor and against Defendants as follows:

1.     Declaring the Policy does not afford coverage to the Poteat Defendants for the Haggard Suit;

2.     Declaring ALPS has no duty to defend or indemnify the Poteat Defendants under the Policy with respect to the Haggard Suit;

3.     Awarding damages in favor of ALPS and against the Poteat Defendants in the amount of the attorneys' fees and costs paid to defend the Poteat Defendants with respect to the Haggard Suit; and

4.     Awarding ALPS such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

<u>s/Kevin D. Hartzell</u>
Kevin D. Hartzell (pro hac vice forthcoming)
Brooke H. McCarthy (pro hac vice forthcoming)
KUTAK ROCK LLP
1650 Farnam St.
Omaha NE  68102-2186
Phone: (402) 346-6000
Email: kevin.hartzell@kutakrock.com
Email: brooke.mccarthy@kutakrock.com
*Attorneys for Plaintiff ALPS Property & Casualty Insurance Company*

Omaha, Nebraska
March 1, 2021

4842-0322-7356.1

<u>s/Warren C. Powell, Jr.</u>
Warren C. Powell, Jr. (Fed ID No. 3138)
Bruner Powell Wall & Mullins, LLC
1735 St. Julian Place, Suite 200 (29204)
PO Box 61110
Columbia SC  29260-1110
Phone: (803) 252-7693
Email: wpowell@brunerpowell.com
(Local Counsel)
*Attorneys for Plaintiff ALPS Property & Casualty Insurance Company*

Columbia, South Carolina
March 1, 2021